IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
03 MAR 31 AM 10:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

TOMMY J. WILSON,

    Plaintiff,

v.

FLEETPRIDE, INC.,

    Defendant.

CIVIL ACTION NO.

02-AR-0887-S

ENTERED
MAR 3 1 2003

## MEMORANDUM OPINION

Before the court is a motion for summary judgment by defendant, Fleetpride, Inc. ("Fleetpride"). Plaintiff, Tommy J. Wilson ("Wilson"), an African-American male, brings this action asserting claims of race discrimination under Title VII and Section 1981. Wilson's response to Fleetpride's motion was due on March 28, 2003. There was no request for an extension of time and no reply filed by Wilson. Although Wilson's failure to respond does not permit the court to enter a "default" summary judgment, it does, however, permit the court to accept Fleetpride's evidence as undisputed. See *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1999). (noting that when the nonmovant submits no summary judgment response, the factual allegations of the movant are properly taken as true); *Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990). In failing to respond to Fleetpride's motion Wilson has

1



not only failed to demonstrate the existence of genuine issues of fact, but also has failed to identify contradicting evidence in the record and to articulate the precise manner in which that evidence supports his claims. *See Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455 (5th Cir. 1998).

### Statement of Undisputed Facts

Wilson is a current employee of Fleetpride. He holds the position of Lead Man in Fleetpride's Brake Shop. His allegations of race discrimination concern (1) a promotion to Brake Shop Manager he claims was promised to him but was not awarded to him on a permanent basis and was given to a white male Wilson claims was less qualified, and (2) a claim that he was promised the pay for the Brake Shop Manager position but never received it.

Wilson has worked for Fleetpride or its predecessors since 1986. Prior to May 2001, Roger Williamson ("Williamson") was Fleetpride's Brake Shop Manager. Wilson, as Lead Man, is the most senior person in the Brake Shop except for the Manager and is the highest paid hourly employee in the Brake Shop. In April 2001, Williamson was reporting to Chuck Shaver ("Shaver"), who had responsibility over three shops, the Gear Shop, the Drive-Lin Shop, and the Brake Shop. Shaver, in turn, reported to Gary Smith ("Smith"), the Warehouse/Logistics Manager for the Southeast Region.

Shaver was hired in 1983. Although he left the company for a

few years he retained his original hire date of 1983. On or about May 4, 2001, Williamson resigned his employment with Fleetpride. The position of Brake Shop manager was not posted after Williamson resigned.  Wilson did not apply for the Brake Shop Manager position. Fleetpride decided not to replace Williamson and instead had Shaver assume most of Williamson's duties. Shaver continued to manage the three shops, but with more direct involvement with the  Brake Shop. Wilson testified that Shaver did not want the Brake Shop Manager position. Wilson contends that Smith told him he would get Williamson's position and pay and told the other employees that Wilson was going to be the Brake Shop Manager. Wilson believes he was put in the Manager position and that he was better qualified than Shaver because Shaver did not know how to perform the physical labor of the Brake Shop. Wilson has never seen any paperwork showing that he was the Brake Shop Manager.

    Wilson performed some of the administrative duties of the Brake Shop even when Williamson was there. When Williamson left, Wilson assumed more of such tasks. When Shaver moved to the Brake Shop, Wilson no longer had to perform any computer-related duties. On May 18, 2001, Fleetpride awarded Wilson a $1.00 per hour raise, from $11.75 per hour to $12.75 per hour since as Lead Man he would have increased responsibility. Wilson admits he received a 50 cent per hour raise at the time of this

announcement, but claims it was a few months until he received the other 50 cents of the raise.

In June of 2001, Fleetpride again revised the organization of management assignments and Shaver relinquished responsibility for the Gear and Drive-Line Shops and retained only the responsibility for the Brake Shop. At that time, with only the Brake Shop remaining under his responsibility, Shaver physically moved his office to the Brake Shop. Although Shaver always had responsibility for the Brake Shop, the only involvement of which Wilson was aware that Shaver had with regard to the Brake Shop was to provide purchase numbers for purchases over a certain dollar amount. Shaver's approval of these purchase orders was required even when Williamson was the Manager. When Shaver physically moved to the Brake Shop, Smith told Wilson he was "still going to be the lead man" and that he was not receiving a demotion.

On two occasions, Williamson told Wilson that Fleetpride would never have a black as a manager. The first time Williamson made this comment was about a year to a year and half before he resigned in May 2001. The second time Williamson made this comment was about two months after his resignation. Williamson was not involved in the decision regarding who would be the next Brake Shop manager.

Wilson claims he did not receive the Brake Shop Manager

4

position and pay on a permanent basis because of his race. He testified that he had supervisory experience during his military service. Shaver had supervisory and/or managerial experience with Fleetpride. Wilson filed a charge of discrimination with the EEOC. The EEOC concluded that there was not sufficient evidence to show that Wilson's race was a determining factor in Fleetpride's employment decision.

## Analysis

Wilson brings his failure to promote and wage discrimination claims under both 42 U.S.C. § 1981 and under Title VII. Fleetpride addressed the claims together because Title VII and Section 1981 have the same requirements of proof and use the same analytical framework. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

"To establish a prima facie case of discriminatory failure to promote, a plaintiff must prove: (1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001). If the plaintiff can establish these elements, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the challenged employment action. *Id.* At 1183. If the defendant produces such a

5

reason, a plaintiff then has the ultimate burden of proving that the reason is a pretext for unlawful discrimination. *Id*.

Fleetpride contends that Wilson cannot establish the second nor the fourth prong of his prima facie case. The second prong requires Wilson to establish he applied for the promotion. Wilson conceded in his deposition that he did not apply for the Brake Manager posistion. Fleetpride further contends that as to the fourth element of the prima facie case, Wilson cannot establish that "other equally or less qualified employees who were not members of the protected class were promoted." Fleetpride asserts that Wilson's proof on this issue fails in two regards. First, Wilson cannot establish that he was more qualified for the Brake Shop Manager position than Shaver. Second, he cannot establish that Shaver was "promoted" into the Brake Shop Manager position.

Fleetpride maintains that Shaver managed the Brake Shop and two of the other shops. Thus, not only did he have managerial experience, he had managerial experience over the Brake Shop. Wilson, on the other hand, had never managed the Brake Shop. As Lead Man, he had some limited experience backing up the manager, but did not have experience overall managing the shop. Fleetpride argues that because Wilson cannot show either that Shaver was equally or less qualified than Wilson or that he was promoted, Wilson cannot establish a prima facie case of discrimination on his failure to promote claim. The court agrees. Fleetpride's

motion for summary judgment on Wilson's race discrimination claim is due to be granted.

Assuming *arguendo* Wilson could establish a prima facie case on his promotion, Fleetpride has legitimate, non-discriminatory reasons for not awarding the position to Wilson. According to Fleetpride, employees are selected for positions based upon which employee, according to the managers, is the most capable of handling the duties of an overall job. Shaver had previously had managerial responsibility for the Brake Shop so he was chosen to continue this responsibility. The crux of Wilson's argument is that he was more qualified than Shaver. Thus the question becomes whether Wilson was so much more qualified than Shaver that a reasonable fact finder could infer that Fleetpride did not believe that Shaver was better qualified. The court agrees with the defendant that this question cannot be answered in the affirmative.

Furthermore, the only evidence which might inject the subject of race into this case is Wilson's testimony that Williamson told him that Fleetpride would never have a black as a manager. However, Williamson was not a decision maker and the comments were remote in time from the decision at issue. Wilson has presented no other evidence that race was a motivating factor in Fleetpride's decision. Wilson is unable to show Fleetpride's reasons for not promoting him were pretext for race

7

discrimination.

Wilson's pay discrimination claims are evaluated under the *McDonnell Douglas* burden shifting analysis. To establish a prima facie Title VII case, Wilson must show that his job was substantially similar to higher paying jobs occupied by white employees. *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995). Fleetpride argues that Wilson cannot establish his prima facie case of pay discrimination because he cannot present evidence that he was paid less than any white employees who were similarly situated. Wilson was, at all times during his employment, an hourly employee. Although he was a Lead Man and provided support to the Brake Shop Manager on certain administrative tasks, he was not responsible for the overall operation of the shop. Shaver, on the other hand, was a salaried management employee who had overall responsibility for the shop. Fleetpride asserts that because Shaver and the other Brake Shop Managers had duties above and beyond Wilson's, no inference can be drawn regarding any pay discrepancy. Furthermore, Wilson cannot offer any admissible proof as to the pay of Shaver or other managers to whom he compares himself. Because Wilson can show neither that he was paid less than any of the alleged comparators he has identified, nor that they were similarly situated to him, Wilson cannot establish a prima facie case of pay discrimination.

## **CONCLUSION**

By separate order, the court will grant Fleetpride's motion for summary judgment.

DONE this 31st day of March, 2003.

*/s/ William M. Acker*

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE